United States District Court
Southern District of Texas
**ENTERED**
March 14, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| VARICHEM INTERNATIONAL, INC., § § *Plaintiff*, § v. § § RIDDLE'S DELHI & CHEMICAL § SERVICE CO., INC., d/b/a E&P SERVICES § GROUP, PIG SWEEP, LLC, and JAMES A. § ALLRED, JR, § § *Defendants*. | CIVIL ACTION NO. 4:24-cv-1784 |

## ORDER

Pending before the Court is Defendants Riddle's Delhi & Chemical Service Co., Inc., d/b/a E&P Services Group ("E&P"), Pig Sweep, LLC ("Pig Sweep"), and James A. Allred, Jr.'s ("Allred") (collectively, "Defendants") Motion for Dismiss Plaintiff VariChem International, Inc.'s ("VariChem" or "Plaintiff") First Amended Complaint. (Doc. No. 10). Plaintiff filed a response in opposition (Doc. No. 11), Defendants replied (Doc. No. 12), and Plaintiff filed a surreply. (Doc. No. 13). Considering the motion, briefing, evidence, and applicable law, the Court hereby **GRANTS in part** and **DENIES in part** Defendants' Motion to Dismiss. (Doc. No. 10).

### I.   Background

Plaintiff VariChem is a company that develops chemicals used in the oil field. (Doc. No. 6 at 2). Plaintiff also consults and assists clients with identifying and solving the client's needs. (*Id.*). Defendant E&P is allegedly one such client. Defendant Pig Sweep is a subsidiary of E&P. (*Id.*). Plaintiff alleges that Defendant Allred is an "employee and/or co-owner" of E&P and/or Pig Sweep. (*Id.*). In 2013, Plaintiff began to develop and sell a solution that included nanoparticles, though Plaintiff does not specify the type of nanoparticles it used. (*Id.* at 2–3). Plaintiff asserts that the introduction of nanoparticles to a fluid:

1

allows for unique Brownian motion, that is, randomized particle motion within a medium, that results in improved operations. For example, Brownian motion can create disjoining pressure on a microscopic scale, allowing the nanoparticles to more deeply penetrate, loosen, and eventually dislodge unwanted deposits. The end result is a more mobile fluid within a client's system.

(*Id.*).

In 2016, Plaintiff prepared two PowerPoint presentations that included "testimonial, laboratory, and field results based upon the use of nanoparticles in various chemical solutions." (*Id.* at 3). The presentations also include suggested uses for the nanoparticle chemical solutions, "which include, but are not limited to, pipeline cleaning and mitigation." (*Id.*). Plaintiff showed, and provided hard copies of, the PowerPoint presentations to Allred and others at E&P at least twice in 2016. (*Id.*).

Plaintiff and E&P first entered into "business relations" on January 24, 2017 after the latter received the PowerPoint presentations. (*Id.* at 4). Plaintiff and E&P subsequently entered into two agreements that include non-disclosure, non-circumvention, non-interference, and non-compete clauses on March 27, 2019, and again on August 4, 2021 (collectively, the "Agreements"). (*Id.*).

Plaintiff generally alleges that it is the owner of valid and enforceable trade secrets, including trade secrets related to Plaintiff's:

> product information, specifications, manuals, methods, formulas, compositions, application process and procedures, technology, data, know-how, 3rd-party vendor and client lists, reports, analyses, compilations, records, notes, presentations, summaries, studies, and other materials related to Plaintiff's chemicals business and solutions.

(*Id.*). Plaintiff contends that E&P violated the Agreements when it began competing and interfering with Plaintiff by utilizing its confidential information, including the aforementioned trade secrets, to develop its own oilfield chemical solutions. (*Id.* at 4). E&P also allegedly violated the Agreements by contacting and soliciting Plaintiff's customers directly. (*Id.*). Moreover, as early as

2

January 13, 2020, E&P patented a chemical solution (that it named Pig Sweep), which it describes as the "first nanoparticle mechanical cleaning process for oil and natural gas pipelines." (*Id.*).

Plaintiff filed its Complaint against the Defendants alleging five causes of action and two requests for declaratory judgment. (Doc. No. 1). Defendant filed its original motion to dismiss (Doc. No. 4), to which Plaintiff responded (Doc. No. 7) and simultaneously filed its First Amended Complaint. (Doc. No. 6). Defendants agree that Plaintiff's filing of its First Amended Complaint moots its original motion to dismiss. (Doc. No. 10 at 2). It is hereby denied as moot. Defendants filed a second motion to dismiss addressing the First Amended Complaint, which the Court now considers. (Doc. No. 10).

Plaintiff's First Amended Complaint alleges four causes of action and two requests for declaratory judgment: (1) violation of the Federal Defend Trade Secrets Act 18 U.S.C. § 1836, et. seq. ("DTSA") against all Defendants; (2) violation of the Texas Uniform Trade Secrets Act Tex. Civ. Prac. & Rem. Code Ann. § 134A, et seq., ("TUTSA") against all Defendants; (3) common law misappropriation against all Defendants; (4) breach of contract against all Defendants; (5) declaratory judgment for patent invalidity based upon Defendants' failure to disclose the existence of Plaintiffs' materials regarding the use of nanoparticles; and (6) declaratory judgment for patent invalidity based upon the inequitable conduct and fraud on the United States Patent & Trademark Office ("USPTO"). *See* (Doc. No. 6). Defendants now seek to dismiss each cause of action for failure to state a claim upon which relief may be granted.

## II.     Legal Standard

A defendant may file a motion to dismiss a complaint for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."

3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

### III.   Analysis

As noted above, Plaintiff alleges four causes of action and requests two different declaratory judgments. The Court will address each in turn.

#### A. Statutory Trade Secret Claims (Counts 1 and 2)

VariChem asserts misappropriations of trade secrets claims under both the DTSA and the TUTSA. Defendants argue that Plaintiff has not stated a claim for misappropriation of trade secrets because Plaintiff has not alleged a trade secret. (Doc. No. 10 at 5, 8). Alternatively, even if the Court finds Plaintiff sufficiently pled a trade secret, Defendants argue that Plaintiff has only pled

4

in a conclusory fashion that Defendants misappropriated its trade secrets. (*Id.*). VariChem responds that its description is sufficient and clarifies that it does not asserts that the PowerPoint presentations constitute trade secrets. (Doc. No. 11 at 8). The definitions of "trade secret" in the DTSA and TUTSA are functionally identical. Therefore, the court will consider the sufficiency of VariChem's federal and state trade secret misappropriation claims together. *Compare* 18 U.S.C. § 1839(3) *with* Tex. Civ. Prac. & Rem. Code § 134A.002(6).

A plaintiff bringing a misappropriation of trade secrets claim must allege facts that would show that a trade secret existed. *See GE Betz. Inc. v. Moffitt-Johnston*, 885 F.3d 318, 326 (5th Cir. 2018). TUTSA defines "trade secret" as:

> [A]ll forms and types of information ... if:
>
> (A) the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

Tex. Civ. Prac. & Rem. Code § 134A.002(6). The definition of "trade secret" in the DTSA is functionally the same. See 18 U.S.C. § 1839(3). The Court must weigh six factors to determine whether a trade secret exists:

> (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken to guard the secrecy of the information; (4) the value of the information to the business and to its competitors; (5) the amount of effort or money expended in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*GlobeRanger Corp. v. Software AG United States of America, Inc.*, 836 F.3d 477, 492 (5th Cir. 2016). The existence of a trade secret is usually a question of fact. *Id.* The issue before the Court

is therefore whether VariChem has alleged sufficient facts which, taken as true, would support that a trade secret exists.

Plaintiff is correct that it need not reveal a trade secret in "great detail" to survive a motion to dismiss. Nevertheless, there is a "growing consensus among district courts in this circuit that plaintiffs bringing claims of trade secret misappropriation must 'identify, with reasonable particularity, the alleged trade secrets at issue.'" *Topstone Commc'ns, Inc. v. Xu*, 729 F. Supp. 3d 701, 706 (S.D. Tex. 2024) (quoting *UOP LLC v. Exterran Energy Sols., L.P.*, No. 4:21-CV-02804, 2021 WL 8016712, at *1 (S.D. Tex. Sept. 28, 2021)). While Plaintiff need not identify specific trade secrets in their pleadings, *see Downhole Tech. LLC v. Silver Creek Servs. Inc.*, No. H-17-0020, 2017 WL 1536018 at *4, 2017 U.S. Dist. LEXIS 64189 at *11 (S.D. Tex. 2017), it does need to describe the trade secrets with enough clarity for "defendants [to] understand how each claimed trade secret differs from information in the public domain." *UOP*, 2021 WL 8016712, at *1.

For instance, courts have dismissed complaints that allege trade secrets in "broad, categorical terms, more descriptive of the types of information that generally may qualify as protectable trade secrets than as any kind of listing of particular trade secrets [the plaintiff] has a basis to believe actually were misappropriated." *Am. Biocarbon, LLC v. Keating*, No. CV 20-00259-BAJ-EWD, 2020 WL 7264459, at *5 (M.D. La. Dec. 10, 2020) (quoting *Vendavo, Inc. v. Price f(x) AG*, No. 17-CV-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018)) (applying federal law that defines "trade secret" in a near-identical manner to TUTSA).

On the other hand, courts have also denied motions to dismiss when the complaint alleges trade secrets in categorical terms. In a case similar to the case at bar, this Court found that the plaintiff's description of its alleged trade secrets to be sufficiently pleaded. *Bureau Veritas Commodities & Trade, Inc. v. Cotecna Inspection SA*, No. 4:21-CV-00622, 2022 WL 912781, at

*7 (S.D. Tex. Mar. 29, 2022) (Hanen, J.). There, the plaintiff's complaint defined trade secrets under DTSA as: "its profit and loss information, financial information, business plans, strategic growth strategies, sales information, operational weaknesses, marketing strategies, customer information, pricing, pricing strategies, sales volume, operational plans, employee compensation, vendor and contractor information, testing procedures, certificates, and laboratory technology." *Id.*, at \*6. It also described its trade secrets under TUTSA as: "M&M Division financial information, operational processes, pricing, customer lists, customer contact information, sales strategies, growth strategies, laboratory technology, laboratory equipment lists, employee compensation information, and contractor information." *Id.* This Court found defendant's argument that the plaintiff must identify "what compilation of customer contact information, which cost and pricing data, which customer history and preferences ..., what laboratory equipment lists, testing procedures, or certificate templates constitute trade secrets" to be unavailing. *Id.* at \*7.

Here, unlike in *Bureau Veritas*, where the plaintiff identified the information it alleged to be a trade secret, VariChem seemingly alleges that any information it possesses is a trade secret. Plaintiff defines "Trade Secrets" by listing twenty-one categories, using vague descriptors such as "specifications," "methods," "data," and "know-how," as well as simply stating "other materials related to Plaintiff's chemicals business and solutions." (Doc. No. 6 at 3). While the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to Plaintiff, the Court is not bound to accept factual assumptions or legal conclusions as true. *Sonnier*, 509 F.3d at 675; *Iqbal*, 556 U.S. at 678–79. Additionally, Defendants here do not ask that Plaintiff be required to reveal the details of the alleged trade secrets like in *Bureau Vertias*. Instead, Defendants simply seek enough information to "understand how each claimed trade secret differs from information in the public domain." *UOP*, 2021 WL 8016712, at \*1. Although VariChem

states that its trade secrets are not generally known outside of Plaintiff's business, this conclusory statement is not sufficient to meet Plaintiff's pleading burden.

Accordingly, the Court will allow Plaintiff to file a second amended complaint in order to replead its DTSA and TUTSA claims to identify with more particularity what it alleges are the trade secrets that Defendant's allegedly misappropriated.

### B. Common Law Misappropriation (Count 3)

VariChem alleges a Texas state-law claim of misappropriation. Defendants argue that this claim is preempted by TUTSA.

TUTSA "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." Tex Civ. Prac. & Rem. Code § 134A.007(a). Nevertheless, TUTSA does not affect: 1) "contractual remedies, whether or not based upon misappropriation of a trade secret;" nor 2) "other civil remedies that are not based upon misappropriation of a trade secret." *Id.* at § 134A.007(b).

In its response to Defendants' Motion, Plaintiff clarifies that it does not "merely allege" a common law misappropriation cause of action for misappropriation of a trade secret. (Doc. No. 11 at 10). Instead, Plaintiff states that it *also* alleges misappropriation of "Plaintiff's Property." Plaintiff defines "Plaintiff's Property" as "personal property, including Plaintiff's confidential information, trade secrets, intellectual property, trademarks, and other physical documents containing trade secret and confidential information." (Doc. No. 6 at 7). To the extent that Plaintiff seeks non-contractual remedies that are based upon misappropriation of a trade secret, that claim is preempted by TUTSA. Tex Civ. Prac. & Rem. Code § 134A.007.

As for Plaintiff's contention that Defendants misappropriated "Plaintiff's Property," the Court notes that while Plaintiff does not title nor refer to its claim as such, nor does its pleading

8

describe with any sort of particularity the property that it alleges was misappropriated, it has sufficiently pleaded a claim for unfair competition by misappropriation. To state a plausible claim for unfair competition by misappropriation under Texas law, a plaintiff must allege facts showing:

> (i) the creation of plaintiff's product through extensive time, labor, skill and money,
>
> (ii) the defendant's use of that product in competition with the plaintiff, thereby gaining a special advantage in that competition (i.e., a "free ride") because defendant is burdened with little or none of the expense incurred by the plaintiff, and
>
> (iii) commercial damage to the plaintiff.

*Motion Med. Techs., L.L.C. v. Thermotek, Inc.*, 875 F.3d 765, 774 (5th Cir. 2017) (quoting *U.S. Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 218 (Tex. App.—Waco 1993, writ denied). Plaintiff has alleged enough to raise a reasonable inference of its claimed right to relief.

Plaintiff asserts that Defendants misappropriated Plaintiff's intellectual property, although Plaintiff does not specifically state what the misappropriated intellectual property is. Rather, Plaintiff simply states that, "Defendants wrongfully took, acquired, disclosed, and used nanoparticle chemical solutions from Plaintiff's Property. Instead of a fair and square development of their own products, Defendants have wrongfully used Plaintiff's Property without just compensation." (Doc. No. 6 at 8). This allegation might be sufficient if Plaintiff is really complaining that Defendant converted or stole physical solutions from it, but Plaintiff also incorporates all previous paragraphs. The previous paragraphs allege, in part, that E&P used VariChem's confidential information to develop its own oilfield chemical solutions. (*Id.* at 4). Thus, because the Court must view the facts in the context of the entirety of the First Amended

9

Complaint, the Court assumes that the intellectual property referred to by Plaintiff is the alleged misappropriation of the formula for Plaintiff's nanoparticle chemical solution.[1]

For the first element of the claim, VariChem alleges that "expended extensive time, labor, skill, and money, including countless man hours for developing, testing, formulating, and enhancing its products and services; recruiting and retaining skilled personnel; promoting and maintaining Plaintiff's brand name." (Doc. No. 6 at 7–8); *see Mission Trading Co., Inc. v. Lewis*, No. 16-3368, 2017 WL 4941408, at *5 (S.D. Tex. Nov. 1, 2017) (allegations that the plaintiff had "performed substantial marketing and promotion" for its trademarks and "dedicated 'substantial efforts and financial resources' to the growth of its company" sufficiently supported this first element). This is sufficient to meet VariChem's pleading burden.

To address the second element, Plaintiff alleges that Defendants used the formula "without burdening much time, labor, skill, and money, thereby enjoying a free ride, and gaining special advantage in the oilfield chemicals industry." (Doc. No. 6 at 8). This allegation in conjunction with the incorporated facts, if proved, would support an inference of misappropriation. Finally, VariChem has alleged enough to plead injury, as VariChem alleges that E&P is a competing business. (*Id.* at 4). VariChem's allegations state a plausible claim for relief.

Preemption is the next issue. As noted above, Defendants allege that TUTSA preempts Plaintiff's common law misappropriation claim. TUTSA, however, does not affect remedies that are not based upon misappropriation of a trade secret. Tex. Civ. Prac. & Rem. Code § 134A.007(b). Plaintiff's claim that Defendants misappropriated the formula for Plaintiff's nanoparticle chemical solution is not based upon misappropriation of a trade secret. Instead, it is based upon the alleged

---

[1] Since the Court is allowing Plaintiff to replead its trade secret claims, it would behoove Plaintiff to clarify what intellectual property it alleges Defendants to have misappropriated. If it is the idea of using nanoparticles, Plaintiffs need to specifically say so and specify the product(s) in which they are used.

10

misappropriation of another type of intellectual property.[2] As such, TUTSA does not preempt Plaintiff's unfair competition by misappropriation cause of action, with respect to its non-trade secret misappropriation claims.[3]

### C. Breach of Contract (Count 4)

The Agreements each contained non-disclosure, non-circumvention, non-interference, and non-compete clauses (Doc. No. 6 at 4), though the exact language of the provisions differ between the two. Plaintiff alleges that Defendants, collectively, breached the Agreements when they: 1) "appropriated, transferred, retained, used, and/or disclosed Plaintiff's confidential, proprietary, and highly valuable information and trade secrets;" 2) "offered to sell their Service, which uses Plaintiff's misappropriated Trade Secrets, confidential information and goods and services, in direct competition with the Plaintiff;" 3) "directly contacted vendors, customers, sellers, and other third-party individuals known only to the Defendants because of the Agreements with the Plaintiff." (*Id.* at 9).

On the other hand, Defendants argue that Plaintiff's breach of contract claim against Allred and Pig Sweep should be dismissed because Plaintiff failed to plead facts to support privity of contract with those Defendants. (Doc. No. 10 at 9–10). Moreover, Defendants contend that Plaintiff failed to plead facts sufficient to support a finding that damages resulted from the breach—an element of a breach of contract claim. (*Id.*).

"In deciding a motion to dismiss the court may consider documents attached to or incorporated in the complaint." *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*,

---

[2] As noted above, the Court must view the facts in the light most favorable to Plaintiff. The Court, therefore, assumes that the intellectual property referred to by Plaintiff is the formula for Plaintiff's nanoparticle chemical solution.

[3] At this time, the Court does not opine as to whether other federal or state statute preempts Plaintiff's common law misappropriation claim. *See Mongrue v. Monsanto Co.*, 249 F.3d 422, 428 n.8 (5th Cir. 2001) (finding that the district court was not obligated to find that the state law cause of action was preempted by federal law when the defendant did not raise the issue themselves).

11

336 F.3d 375, 379 (5th Cir. 2003). Plaintiff attached the Agreements to its First Amended Complaint. It is therefore proper for the Court to consider the agreements at this stage. As for Defendants' first issue—Plaintiff's breach of contract claim should be dismissed because Plaintiff failed to plead facts to support privity of contract with Allred and Pig Sweep—Defendants contend that Allred and Pig Sweep are non-signatory parties and, therefore, cannot be liable to VariChem breach of contract claim.

"'[A] party generally must be a party to a contract before it can be held liable for a breach of the contract.'" *Ibe v. Jones*, 836 F.3d 516, 524 (5th Cir. 2016) (quoting *Hoffman v. AmericaHomeKey, Inc.*, 23 F. Supp. 3d 734, 739 (N.D. Tex. 2014)). Plaintiff asserts that the agreements are legally binding on all three Defendants because the agreements include Allred and Pig Sweep as "Representatives." (Doc. No. 11 at 11).

To state a claim for breach of contract, a plaintiff must allege that the defendant owed her a contractual duty and breached it. *See CCC Grp., Inc. v. S. Cent. Cement, Ltd.*, 450 S.W.3d 191, 196 (Tex. App.—Houston [1st Dist.] 2014, no pet). Determining whether a contract is ambiguous is a question of law. *Seagull Energy E&P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006). The court must make this determination based solely on the contract and may not consider extrinsic evidence. *Angus Chem. Co. v. Glendora Plantation, Inc.*, 782 F.3d 175, 182 (5th Cir. 2015). A contract is unambiguous if it can be given a definite or certain meaning as a matter of law. *Nat. Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995).

"An ambiguity does not arise simply because the parties advance conflicting interpretations of the contract." *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996) (citing *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994)). Rather, an ambiguity exists only if both parties' interpretations are reasonable. *Id.* An

interpretation is reasonable if all the contract provisions are properly harmonized and afforded weight. *Id.* at 591. Moreover, a reasonable interpretation must properly consider the circumstances surrounding the contract's formulation. *Id.*

The Agreements begin by defining the parties to the contract: VariChem and E&P. (Doc. No. 6-3 at 2). Neither Pig Sweep nor Allred are a named party in either Agreement, nor are they specifically mentioned anywhere in the Agreements. The Agreements do, however, provide that the parties may have "Representatives." The Agreements vaguely define "Representative" as each party's "attorneys, financial advisors, and other representatives." (*Id.*). The same paragraph states that any such Representative must be advised of the agreement and must agree to be bound by the terms and provisions. (*Id.*). Most importantly, the last sentence of the paragraph also states that "the Parties shall be fully responsible for any breach of this Agreement by their respective Representatives." (*Id.*).

"Under ordinary principles of contract and agency law," an individual defendant's status as an officer or agent "of the defendant corporations is insufficient to personally bind them to the arbitration agreements." *DK Joint Venture 1 v. Weyand*, 649 F.3d 310, 317 (5th Cir. 2011). In *Weyand*, two corporations entered an agreement that included an arbitration provision. There, the issue on appeal was whether the two individual defendants, the CEO and CFO of the defendant corporation, were bound by the arbitration provision. *Id.* at 314. The plaintiff contended that the agreement purported to bind "affiliates" of the defendant corporation, and further claimed that the CEO and CFO counted as affiliates. *Id.* at 318. The Fifth Circuit determined that, even if the agreement could be interpreted to include the CEO and CFO as affiliates of the defendant corporation, "the defendant corporation lacked the authority to bind [the individual defendants] personally." *Id.* at 319. Thus, the Court held that the language about the agreement being binding

13

on "affiliates" could not be sufficient to make the arbitration provision binding on the individual defendants. *Id.*

Though not entirely on point, the reasoning set out in *Weyand* is applicable here. The Court agrees with Defendants that Plaintiff's breach of contract claim against Allred and Pig Sweep fails because the Agreements are not binding on these defendants. Further, the Court's decision to follow *Weyand* is bolstered by the language of the Agreements. The Agreements explicitly provide that the parties to the Agreements (E&P and VariChem) are "fully responsible for any breach of this Agreement by their respective Representatives." While Plaintiff has alleged that each Defendant owes it a contractual duty, and can therefore be liable for breach of the Agreements, the Agreements unambiguously specify that E&P alone is fully responsible for any breach of the Agreement by its Representative. Thus, even if Plaintiff is correct in its assertion that Allred and/or Pig Sweep breached the agreement, and that they are Representatives of E&P as defined by the agreements, Plaintiff can hold only E&P liable for the breach. *See Weyand*, 649 F.3d at 319. Plaintiff's breach of contract claim against Allred and Pig Sweep is therefore dismissed.

As for Defendant's second issue—that Plaintiff failed to plead facts sufficient to support a finding that damages resulted from the breach—Plaintiff argues that it is not required to allege in its complaint the amount of damages caused by Defendants' breach. The Court agrees with Plaintiff.

VariChem sufficiently pleaded that Defendants' alleged breach of contract resulted in damages to it. The First Amended Complaint states that, "Plaintiff suffered and/or will suffer harm and monetary damages as the direct and proximate consequence of the Defendants' breach of the Agreements." (Doc. No. 6 at 9). While this statement is conclusory, Plaintiff also incorporated prior paragraphs, in which it complains that Defendants violated the contract by directly contacting

Plaintiff's customers and utilizing confidential information to develop its own chemical solution. (*Id.* at 4). These facts are sufficient to allege that the alleged breach by E&P damaged VariChem through the improper solicitation of customers and misappropriation of information. Thus, the Court denies Defendants' motion to dismiss Plaintiff's breach of contract claim against E&P.

### D. Declaratory Judgment for Patent Invalidity and Fraud on the USPTO

Lastly, Plaintiff seeks two declaratory judgments. First, Plaintiff asks this Court to declare that Defendants' patents for their chemical solution are invalid because the alleged inventions were described in a printed publication in the United States more than one year prior to the Defendants filing their Patent applications, in violation of 35 U.S.C. § 102. (Doc. No. 6 at 9–10). Second, Plaintiff asks this Court to declare that Defendants' patents are invalid due to Defendants' alleged inequitable conduct and fraud upon the USPTO. (*Id.* at 10–11). Defendants argue that the Court must dismiss both requests because Plaintiff lacks standing since there is no substantial controversy of sufficient immediacy to warrant the issuance of a declaratory judgment. (Doc. No. 10 at 10–11).

Declaratory judgment actions turn on "'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). This "immediacy and reality" inquiry can be viewed through the lens of standing. *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1338 (Fed. Cir. 2008). Plaintiff asserts that imminent injury or imminent risk of an injury exists because "E&P has sent cease and desist letters threatening infringement of its Patents to at least one of its competitors in the pipeline cleaning/services industry." (Doc. No. 6 at 9). Moreover, Plaintiff alleges that on February 14, 2024, Cal Sparks, an E&P employee, accused

15

Plaintiff of infringing E&P's patents. (*Id.*). Defendants contend that these facts are insufficient to show immediacy or threat of injury. (Doc. No. 10 at 11). Specifically, Defendants suggest that even if what Plaintiff asserts is true, that only shows that Defendants threatened another entity with suit and that an E&P employee told Plaintiff that it was infringing. (Doc. No. 12 at 5).

The Court agrees that Defendants' threatening a different company with suit for infringement is not sufficient to show that there is an immediacy to warrant the issuance of a declaratory judgment. "Jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee." *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380–81 (Fed. Cir. 2007). Nevertheless, Plaintiff has alleged an affirmative act against it by the patentee, E&P. Plaintiff alleges that an E&P employee explicitly accused VariChem of infringement. Threatening another company with suit for infringement coupled with the E&P employee accusing Plaintiff of infringing E&P's patents is sufficient to show that there is a substantial controversy of sufficient immediacy. The Court finds that Plaintiff presents a justiciable case or controversy supported by factual allegations. Thus, the Court denies Defendants motion to dismiss Plaintiff's requests for declaratory judgment.

## IV.    Conclusion

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion to Dismiss. (Doc. No. 10). Plaintiff shall file a second amended complaint within twenty-one days of this Order to address the Court's concerns regarding its DTSA and TUTSA trade secret claims. Defendants have leave to respond to the new complaint if they do so within fourteen days of its filing. Plaintiff's claims for breach of contract as against Defendants Allred and Pig Sweep are dismissed. Plaintiff's breach of contract action against E&P, claim for common law

misappropriation, and requests for declaratory judgment remain. The Court also strongly advises Plaintiff to plead with more specificity with regard to its claim for common law misappropriation. All other pending motions are hereby **DENIED** as moot. (Doc. No. 4).

Signed at Houston, Texas, on this the 14 day of March, 2025.

Andrew S. Hanen
United States District Judge